# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                         No. CIV 97-1199 JP/LCS

36.06 ACRES OF LAND,

    Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on the law firm of Cardin and Parmley ("the firm")'s Motion to Enforce Charging Lien, filed on August 23, 1999. The Court, having considered the motion, the memoranda and evidence submitted by the parties and the applicable law, finds that the motion is well-taken in part and it will be granted in part.

Stonecreek Properties North, Ltd.Co., ("Stonecreek") employed the firm to represent it in a condemnation action. The United States government appraised Stonecreek's land at $141,300.00 Stonecreek agreed to pay the firm a percentage[1] of any amount in excess of the appraised amount that they eventually were paid for the land, plus the firm's costs. This agreement was not reduced to writing. The United States eventually offered $180,000.00 for the property, but Stonecreek refused. The firm instructed Stonecreek to obtain the report of an independent appraiser. Stonecreek, one of whose directors was a professional appraiser, did not obtain the appraiser's report in time to meet the deadline for expert witnesses reports set by this Court. Apparently based on Stonecreek's unwillingness to accept the settlement offer and tardiness in obtaining the report, the firm withdrew

---

[1] The firm contends that the percentage was 40%; Stonecreek contends that the percentage was 33 1/3%.

from representing Stonecreek and gave notice that they would file a charging lien. Stonecreek employed new counsel, who handled the case through trial. The jury valued the land at $181,300.00. The firm seeks to enforce an equitable charging lien[2] for 40 percent of the $40,000.00 difference, plus $2,789.28 in costs and $1,115.61 in taxes, for a total claim of $19,904.89.

The firm filed a motion to enforce its lien on August 23, 1999. It did not file a brief in support of the Motion, and did not provide any evidence of either the work it did or the costs it incurred. Stonecreek responded that under D.N.M.L.R.Civ. 7.5(b), a party's failure to file a brief in support of a motion constitutes consent to deny the Motion. In its reply, the firm briefed the issues, responded to Stonecreek's arguments, and supplied documentation of its work and its costs. The Court finds that the firm's supplying this material, albeit in its reply, negates its implied consent to deny the motion. However, as Stonecreek also points out, the firm's tardiness in briefing forced Stonecreek to seek leave of Court to file a surreply in order to respond to the contentions raised in the reply. The Court will therefore allow Stonecreek to recover its costs and attorney's fees for preparing and filing its motion for leave to file a surreply[3].

Stonecreek next contends that the firm's lien is invalid because the contract upon which it was based is unenforceable. Stonecreek relies upon N.M.R.Prof.Conduct 16-105(C)(1999), which provides in relevant part:

---

[2] A legal charging lien applies to funds in the attorney's possession as a result of his efforts in a particular case, while an equitable charging lien gives the attorney the right to be paid out of a fund in court which resulted from his skill and labor in a particular case. *Novinger v E.I. DuPont de Nemours & Co. Inc.*, 809 F.2d 212, 218 (3d Cir. 1987). In the present case, the funds at issue are in the trust account of the successor attorney pending resolution of this motion.

[3] The Court presumes that it required no more time to prepare a a separate surreply than it would have taken to include the surreply arguments in the response, and accordingly awards no costs or fees for preparing and filing the surreply itself.

> Contingency fees. ...A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentages that shall accrue to the lawyer in the event of a settlement, trial or appeal, litigation or other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the recovery...

The firm does not dispute that it violated this rule.[4] However, it contends that an unwritten contingency fee contract is still enforceable even if it is a violation of the attorney's code of ethics. This issue has been often litigated, and the jurisdictions which have considered it have split; however, it is a matter of first impression in New Mexico.[5] In such a case, the federal court must resolve the issue based upon its prediction of how the New Mexico Supreme Court would resolve the issue. *See Carl v. City of Overland Park,* 65 F.3d 866, 872 (10th Cir. 1995).

To generate such a prediction, the Court will first examine the reasoning employed by the other jurisdictions. One court has held that because the rules of professional conduct are meant to protect the public, they should be construed broadly and that lawyers who violate the rules should be precluded from recovering any payment whatsoever for their services. *See, e.g., Silver v. Jacobs*, 682 A.2d 551, 558-59 (Conn. App. 1996). The middle ground, represented by several courts which have held that have held oral contingency fee contracts are unenforceable and that attorneys may recover only in *quantum meruit,* includes *Vaccaro v. Gorovoy,* 696 A.2d 724, 726 (N.J. App. 1997); and *Beeson v. State Indus. Claim App. Office*, 942 P.2d 1314, 1316 (Colo. App. 1997). These courts held that contracts in violation of public policy are unenforceable, and that the attorneys' rules of professional conduct are an expression of public policy. However, as with other unenforceable

---

[4] A copy of this opinion will be sent to the State Disciplinary Board. See Rule 16-803(A) N.M.R.A. (1999).

[5] The parties appear to agree that the fee agreement should be interpreted under New Mexico law.

contracts, aggrieved parties may still recover the reasonable value of their services. At the other end of the spectrum from *Silver* are courts which hold that an attorney's violating the rules of professional conduct should not provide a legal defense to a suit on a contract. The preamble to the Model Rules of Professional Conduct provides, in relevant part:

> Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such duty.

Courts which hold oral contigency fee contracts enforceable rely on a broad interpretation of this preamble. *See, e.g., Harvard Farms, Inc., v. National Casualty Co.,* 617 So.2d 400, 401 ( Fla. App. 1993); *see also Novinger v. E.I. DuPont de Nemours & Co. Inc.*, 809 F.2d 212, 218 (3d Cir. 1986).

From among these alternatives, the Court predicts that the New Mexico Supreme Court, if faced with this issue, would follow the "middle ground" approach. This prediction is based upon an analysis of three cases.

In *Fryar v. Johnsen,* 601 P.2d 718 (N.M. 1979), the Supreme Court reduced the amount of an attorney's fees award because it was unreasonable. To determine what was reasonable the court relied on the factors found in the Rules of Professional Conduct. The suit did not involve an oral contingency fee contract between an attorney and his client; rather it involved an award of attorney's fees to a successful plaintiff in a worker's compensation claim.

4

In *Citizen's Bank v. C&H Construction & Paving Co.*, 600 P.2d 212 ( N.M. App. 1979), the New Mexico Court of Appeals held that while as a general matter written contingency fee contracts will be enforced, they will not be enforced if they allow the attorney to recover a fee which is excessive or unreasonable. The Court placed the burden of proving the reasonableness of the fee on the attorney, and cited the New Mexico Rules of Professional Responsibility as authority for determining what is reasonable. *See* 600 P.2d at 1219. Broadly read, *Citizen's Bank* suggests that contingency fee contracts which violate the ethics rules will not be enforced; however, it is not a Supreme Court opinion, and it does not discuss whether the violation of the rule requiring such contracts to be in writing would be considered as serious as the violation of the rule that such contracts not be excessive or unreasonable.

However, a third case suggests that the Supreme Court might treat the two rules identically. In *In re Greenfield*, 916 P.2d 833 (N.M. 1996), an attorney had an oral contingency fee agreement to represent a client in a slip and fall case. The attorney received a settlement check for $20,000, but spent the entire amount without forwarding any part of the $13,333.00 to the client. The Court disbarred the attorney. While condemning the conversion of trust funds, the Court also stated that "violation of any mandatory rule such as requirement to put contingency fee in writing should never be considered a minor offense."

The court ordered the attorney to pay restitution to the client. Because the court did not state how much total restitution was paid, it is not possible to discern whether the court allowed Greenfield to keep the $6,667.00 he would have received as his fee under the oral contract, or some lesser amount. Accordingly, the opinion does not reveal whether the court upheld the unwritten contingency fee agreement.

While not dispositive, these three cases are consistent with and indeed suggest that unwritten contingency fee contracts, because they violate the Rules of Professional Conduct, will not be enforced, and an attorney's recovery in such cases will be limited to a reasonable fee under the circumstances - the "middle ground" position announced in *Vaccaro* and *Beeson*. The Court predicts that the New Mexico Supreme Court, if presented with this issue, would adopt that rule. Accordingly, I find the oral contingency fee agreement between the firm and Stonecreek to be unenforceable, but I also find that the Firm may seek to recover the reasonable value of its services under *quantum meruit*.[6]

The Court must decide whether to allow the firm to recover in *quantum meruit*. Generally, an attorney's voluntary withdrawal from representation precludes *quantum meruit* recovery if the attorney does not establish justifiable cause for withdrawing. *See* Annot., Circumstances Under Which Attorney retains right to Compensation Notwithstanding Voluntary Withdrawal from Case, 53 A.L.R. 5th 287 (1997). However, a client's refusal to accept a reasonable settlement offer can constitute a justifiable cause for withdrawal. *Cf. Kannewuf v. Johns*, 632 N.E. 2d 711, 714 (Ill. App. 1994). In the present case, the closeness of the jury's final award to the settlement offer establishes the reasonableness of that offer. Accordingly, the Court finds that the firm withdrew from this case for justifiable cause and is not precluded from recovering in *quantum meruit*.

A reasonable value for the services must be determined. The Court begins from the premise that 33 1/3% contingency fee is the norm. Thus, for a case such as this, where the final recovery was $40,000.00, a $13,333.33 fee would appear reasonable. However, implicit in the notion of a

---

[6] Stonecreek contended in its surreply that the firm could not assert a lien at all against the $22,000 fund held in trust. The Court does not reach that contention here, holding only that the firm is entitled to receive a reasonable fee under *quantum meruit*.

contingent fee is that the firm will represent the client until judgment is obtained. In the present case, the firm withdrew from representation after a settlement offer was refused, but prior to trial. The Court considers this the approximate "halfway" point of the case, and so sees a reasonable fee under such circumstances to be 50% of $13,333.33 or $6,666.67.

The Court next takes into account that the litigation on this issue could have been prevented had the firm complied with the Rules of Professional Conduct. In an equitable proceeding such as this one, it is incumbent on the party seeking equity to come before the court with "clean hands". *Stein v. Alpine Sports, Inc.*, 968 P.2d 769, 774 (N.M. 1998). The firm's failure to observe the ethical requirement of reducing its fee agreement to writing renders its hands less than pristine for purposes of this motion. While it is not the province of this Court to sanction attorneys for breaching those rules, it is within the Court's discretion in an equitable proceeding such as this to vindicate the public policy evidenced in those rules. Accordingly, the Court finds that a reasonable fee under circumstances where the ethical rules have been breached by not putting the fee agreement in writing should be less than a reasonable fee in circumstances where no ethical breach has occurred.

In determining how much of the fee should be forfeited, the Court considered that the record contains evidence that the firm attempted in good faith to secure a written fee agreement. I also considered that the clients in this case were sophisticated businessmen, and that the dispute about the contingency fee agreement was only about the size of the attorney's percentage[7]. In light of these factors, the Court finds that an appropriate forfeiture is one third of the fee or $2,222.22, leaving an award for the firm of $4,444.45.

---

[7] See footnote 1.

The Court will deduct $144.45 of this amount to cover the cost of Stonecreek's preparing a motion for leave to file its surreply, leaving a final *quantum meruit* award of $4,300.00 in fees, plus taxes to be calculated at the applicable rate. The Court also finds that Stonecreek received the full benefit of the $2,883.60 the firm claimed for its costs, and awards the firm that amount. An Order will be entered in accordance with this Opinion.

                                                 **LESLIE C. SMITH**
                                                 **United States Magistrate Judge**